Jennifer Chang, Esq. (JC-5716)
**KROLL HEINEMAN CARTON, LLC**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Tel: (732) 491-2100
Fax: (732) 491-2120
*Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NEW JERSEY BUILDING LABORERS' DISTRICT COUNCIL AND ITS LOCAL 77, | Hon. |
|  | Civil Action No. 17- |
| Petitioner, |  |
|  | **CIVIL ACTION** |
| v. |  |
|  | **PETITION TO CONFIRM ARBITRATION AWARD AND ENTRY OF JUDGMENT** |
| DELTA B.J.D.S., INC., |  |
|  |  |
| Respondent. |  |

Petitioner New Jersey Building Laborers' District Council and its Local 77 ("Union" or "Petitioner") by their undersigned attorneys, as and for their Petition, alleges and says:

1.    Petitioner moves before this Court for an Order, pursuant to the Federal Arbitration Act, 9 U.S.C.A. §§ 9 and 13 ("FAA"), confirming the Opinion and Award of the Arbitrator issued in favor of Petitioner on June 30, 2017 ("Award") in the matter between Petitioner and Delta B.J.D.S., Inc. ("Delta" or "Respondent"), and directing that judgment be entered accordingly. A true and correct copy of the Award is attached hereto as Exhibit "A." This Petition is made on the following grounds.

2.    At all times relevant, the Union was and still is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5)

("LMRA"). Petitioner maintains a principal place of business at 1588 Parkside Avenue, Ewing, New Jersey 08638.

3.      At all times relevant, Respondent was and still is a business entity with a principal place of business located at 1345 Industrial Boulevard, Southampton, Pennsylvania 18966.

4.      The jurisdiction of this Court is based upon the National Labor Relations Act, 29 U.S.C. § 141 et seq., the LMRA, and the FAA.  Venue is proper in this District because the underlying conduct and the underlying arbitration took place in New Jersey.

5.      Respondent is a signatory to a Short Form Agreement ("SFA") incorporating by specific reference the Collective Bargaining Agreement ("CBA" or "Agreement") between the Union and Respondent. A true and correct copy of the SFA is attached hereto as Exhibit "B." A true and correct copy of the applicable CBA is attached hereto as Exhibit "C."

6.      Pursuant to the CBA, Respondent is obligated to notify the Union prior to beginning covered work within the Union's territorial jurisdiction, and to ensure that a Union job steward is on projects where covered work is being performed.

7.      Respondent breached the CBA by failing to notify the Union prior to beginning covered work on the Inspira Hospital, Bridgeton, New Jersey jobsite ("Project") in violation of Article III, Section 3.70, and failing to hire a job steward on the Project in violation of Article VII, Sections 7.10 and 7.50.

8.      Pursuant to CBA, the Union initiated arbitration proceedings on or about May 4, 2017.

9.     Louis P. Verrone ("Arbitrator") was selected to serve as the arbitrator in accordance with the terms of the CBA. The Arbitrator served Respondent with notice of the arbitration hearing.

10.    The issues submitted to the Arbitrator were:

> Whether the Company violated the terms of the Collective Bargaining Agreement by failing to notify the Union in advance of work and failing to employ a certified Job Steward on its Inspira Hospital, Bridgeton, New Jersey jobsite? If so, what shall be the remedy?

11.    A hearing was conducted before the Arbitrator on June 20, 2017.

12.    At the June 20, 2017 hearing, the Union presented evidence of lost work opportunities, lost wages, and lost benefit contributions for work performed on the Project.

13.    On June 30, 2017, after finding that Respondent was duly notified of the hearing and considering the evidence presented, the Arbitrator issued the Award sustaining the Union's grievance and ordering damages in the total amount of $5,531.60.

14.    Specifically, the Arbitrator found that:

(a) Respondent was properly served with Notice of Hearing in this matter but affirmatively chose not to participate;

(b) As Respondent failed to take advantage of the specific termination procedure outlined in the CBA, the Agreement renewed from year to year; and

(c) The preponderance of evidence established that Respondent failed to give notice that it was to begin covered work on the Project in violation of Article III, Section 3.70; and failed to hire a job steward on the Project in violation of Article VII, Sections 7.10 and 7.50.

15.    The Arbitrator ordered that Respondent remit the amount of $5,531.60 in damages, payable as follows: $2,592.00 payable to the Union; $2,189.60 payable to the New

Jersey Building Laborers' Statewide Benefit Funds; and $750.00 payable to the Union in arbitration fees.

16.     To date, Respondent has failed to comply with the Award.

**WHEREFORE,** Petitioner prays for the following relief:

(a) An Order confirming the Arbitration Award of June 30, 2017;

(b) Entry of a judgment or decree by the clerk which may be enforced as any other judgment or decree;

(c) Costs of this petition and of all subsequent proceedings and disbursements;

(d) Costs, attorney's fees, and interests thereupon, as provided by law; and

(e) Such other relief as the Court deems equitable.

**KROLL HEINEMAN CARTON, LLC**
*Attorneys for Petitioner*

/S/ *JENNIFER CHANG*

By: _____

JENNIFER CHANG

Dated: July 27, 2017

# Exhibit A

------------------------------------------------------X

**In the Matter of the Arbitration**
Between

**DELTA, B.J.D.S., INC.**
            **Company**

      **and**                            ***OPINION & AWARD***

**NEW JERSEY BUILDING**
**LABORERS' DISTRICT COUNCIL,**
**LOCAL 77**
            **Union**

**Re: Failure to Apply Agreement – Job Steward**
**Inspira Hospital Bridgeton, N.J. Jobsite**
------------------------------------------------------X
Before Louis P. Verrone, Arbitrator

**APPEARANCES:**

**For the Company**
No Appearance

| | |
|---|---|
| **For the Union** | **Position** |
| Raymond G. Heineman, Esq. | Counsel |
| Kroll Heineman Carton LLC | |
| | |
| Eric Wilcox | Field Representative |

**JURISDICTION**

      This matter was opened before the undersigned pursuant to the terms of a

Collective Bargaining Agreement (UX-1) between the parties referencing my

appointment, under Article XXII Section 22.20, Arbitration Procedure, as alternate

permanent arbitrator with power to decide "All questions or grievances involving the

interpretation and application of this Agreement, including matters of substantive

arbitrability and whether this Agreement exists, or any grievance concerning any term or

condition of work..."  As such, by correspondence dated May 4 and May 8, 2017 the Union requested that I schedule an arbitration between the parties in order to resolve the following submission:

Whether the Company violated the terms of the Collective Bargaining Agreement by failing to notify the Union in advance of work and failing to employ a certified Job Steward on its Inspira Hospital, Bridgeton, New Jersey jobsite?

If so, what shall be the remedy?

## SERVICE OF THE NOTICE OF HEARING

Accordingly, a Notice of Hearing dated June 1, 2017, was served upon the Company by both Certified (#7015 0640 0002 5406 5100) and Regular First Class Mail scheduling a hearing for June 14, 2017.  Thereafter, due to an unavoidable scheduling conflict on the part of the arbitrator, a Notice Rescheduling Hearing issued by Certified (#7015 0640 0002 5406 5117) and Regular First Class Mail on June 9, 2017 rescheduling the hearing for June 20, 2017 at the offices of Kroll Heineman Carton, 99 Wood Avenue South, Suite 307, Iselin, New Jersey.[1]

Despite notification, no representative of the Company appeared at the hearing nor was any request for a postponement received.

---

[1] In addition to the foregoing, the Company was notified by facsimile transmission that same date of this scheduling change.

## MATERIAL FACTS

Union Field Representative Eric Wilcox testified that he is employed by the Union as a Field Representative with jurisdictional responsibilities in the four southern most counties in the State of New Jersey and that the Bridgeton, Inspira Hospital jobsite falls within the area of his responsibility.  Through Wilcox's sworn testimony including a series of documents admitted into evidence the record established that:

1.  On February 4, 2005, Company President, Sallie Lavelle, executed a "Short Form Agreement" (UX-3) on behalf of the Company binding itself to the May 1, 2002 through April 30, 2007 Master Collective Bargaining Agreement between the Union and the Building Site and General Construction Contractor and Employers covering the State of New Jersey.

2.  On May 2, 2010, Company Controller, Damien Lavelle, executed an "Addendum to Collective Bargaining Agreement" (UX-4) extending "All terms and conditions contained in the 2007 - 2012 Collective Bargaining Agreement by and between the New Jersey Building Construction Laborers' District Council and the Employer, shall continue in full force and effect … [and] shall expire on April 30, 2013."

3.  In addition, Wilcox testified that through May 2017, the Company has made contributions to the Union's Statewide Benefit Funds on behalf of employees employed as laborers at various Company projects including the John Whittier School, Camden, New Jersey and the Lord & Taylor, Quaker Bridge Mall job sites. (UX-6).  According to Wilcox, at no time since executing either the Short Form Agreement (UX-3) or the Addendum (UX-4) did any representative of Delta ever provide notice to the Union that it wished to terminate the Agreement.

3

4.    Wilcox further testified that on May 3, 2017, Union Business Manager, Carl

Styles, dispatched him to the Bridgeton Inspira Hospital project to investigate

complaints that the demolition work on the project was being performed by non-

union workers.

5.    Wilcox testified that later that day he met with General Contractor Hunter

Roberts' Job Superintendent, David Frey, at the Inspira jobsite.  Frey advised

Wilcox that Delta had begun work on the project on April 13, 2017 and had just

completed two weeks of phase one demolition work but that Delta would be

returning to the job to begin phase two asbestos abatement.  Wilcox also testified

that Frey advised that Delta employed 4 to 5 laborers on any given day during the

phase one demolition.  According to Wilcox, demolition work is within the

jurisdiction of Local 77 but that asbestos abatement is within the jurisdiction of

Laborers' Local 78.  Notwithstanding, Wilcox testified that Local 77 never

received any advance notice from Delta that it was to begin demolition work on

the project, what its manpower needs would be or that the Local 77 should refer a

certified Job Steward.

6.    Wilcox testified that after meeting with Frey, he contacted Delta's Job Foreman,

Dominic Pasquale, whom he had learned had supervised the earlier demolition

work.  According to Wilcox, Pasquale confirmed that Delta had performed the

demolition work over the prior two weeks using 4 to 5 workers and that he had

not called the Local for a certified Job Steward.

7.    According to Wilcox, at no time between April 13, 2017 and June 20 2017, the

date of arbitration, had the Company called the Local to refer a certified Job

Steward or have any fringe benefit contributions been received by the Union's

4

Funds with regard to the demolition work referred to above.  Thus, in the absence

of a certified Job Steward, Wilcox testified that the Union is without sufficient

knowledge of the total number of hours worked, the rates of pay provided and

whether contractual benefits were provided under the terms of the Agreement.

8.    Wilcox also testified that on June 9, 2017, he visited another Inspira Hospital

jobsite on Sherman Avenue in Vineland, New Jersey where Local 77 had referred

a Job Steward to General Contractor, Hunter Roberts.  According to Wilcox, the

Steward had reported that two "non-union laborers" were on site performing work

for Delta.  Wilcox testified that he approached the two, who confirmed that they

were employed by Delta and that they were non-union although one of the two

stated that he wanted to join the union.  Wilcox advised that it was a union job

and requested that they leave.  After the two left, Wilcox testified that he met with

Hunter Roberts' Project Manager, Chris Hoover, and advised him that he had

asked the two non-union laborers to leave the job.


## RELEVANT CONTRACT PROVISIONS


### Article 1: Recognition and Scope of Agreement
### Section1.10 Union Recognition

The Employer recognizes that the New Jersey Building Construction Laborers District
Councils and Local Unions bound hereby represent a majority of employees of the
Employer doing laborer's work in the State of New Jersey and shall be the sole
bargaining representatives with the Employer for all employees employed by the
Employer engaged in all work of any description set forth under Article II, Section 2.10
Work Jurisdiction, below....

**Article II: Work and Territorial Jurisdiction**
**Section 2.10 Work Jurisdiction**

**Wrecking:**
The wrecking, deconstruction or dismantling of buildings and all structures including interior demolition and selective or controlled demolition.  Handling of all dismantled materials and debris to be recycled or salvaged.  Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary.  Burning or otherwise cutting all steel structural beams.  The operations and maintenance of all hydro-demolition equipment.  Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap.  All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick.  All loading and unloading of materials carried away from the site of wrecking….All clean-up and removal of debris….

**Article III: Union Security and Hiring**
**Section 3.70 Job Notification**

All Employers shall provide notification of a job start to the Local Union where a project is located prior to the start of its work on the project.  General Contractors shall advise the Local Union of all subcontractors scheduled to perform work within this Agreement at the jobsite and shall also require those subcontractors to give notice at the commencement of their work.

**Article VII: Job Stewards**
**Section 7.10 Appointment of Job Steward**

(a) On every job where laborers are employed by an Employer bound to this Agreement there shall be a laborer Job Steward employed by the Employer who shall be a member of the territorial local union where the job is located.  No laborer shall be permitted to work without a Job Steward.
(b) The Job Steward shall be appointed by the Business Manager in his sole discretion….

**Section 7.30 Job Steward Responsibilities**
(a)      It shall be the duty of the Job Steward to see to it that the provisions of this Agreement are being fully carried out on said job.

**Section 7.50 Certified Job Stewards**

(a) A Job Steward who has satisfactorily completed (1) thirty-hour OSHA Construction Safety and (2) First Aid/CPR and (3) Scaffold User and (4) Lead Renovator courses, together with any additional courses or refreshers required by the Union, shall be classified a Certified Job Steward.

(b) Certified Job Stewards , their training being a benefit to the Employer, and as compensation for completing records of hours worked for the fringe benefit funds due contributions under this Agreement, shall be paid $.75 per hour over the Class A Rate or over the rate for the classification in which he is working, whichever is higher.

**Article X: Wages and Fringe Benefits**
**Section 10.70 Wage and Fringe Benefit Package**

Pursuant to the Wage Rate and Fringe Benefit Rate Schedule (UX-2), the hourly rate of pay in effect during April 2017 for Job Stewards was $31.65 and $27.37 hourly for fringe benefits plus an additional $.75 hourly increase for Certified Stewards.

**The 2007 through 2012 Agreement (UX-1b)**
**Article XXIII: Agreement and Termination**
**Section 23.10 Effective Date**

This Agreement shall become effective on the 1st day of May 2007, or the date signed, whichever is later, and shall terminate at midnight, April 30, 2012. It is mutually agreed, however, that if any Employer signatory or bound to this Agreement desires to terminate this Agreement or to reopen negotiations for a successor agreement to take effect as of the termination date, such Employer must give written notice to the Laborers' International Union of North America, Eastern Region office, of such intention ninety (90) days prior to the termination of this Agreement, otherwise this Agreement is to continue in full force and effect after the termination date of this Agreement from year-to-year…
In the case of such continuation, the Employer agrees to be bound by the wage and benefit rate schedules and other terms of any new Agreement(s) made by the Union and the Building Contractors Association of New Jersey…
Notice by the Union to reopen negotiations shall be given to the Building Contractors Association of New Jersey and shall serve as notice to all signatories of this Agreement, but shall not relieve the employers of their obligation to give notice to terminate this Agreement as set forth above and, unless such notice is received by the Union as provided, such employers shall be subject to the continuation provisions of this Article.[2]

**The 2016 through 2019 Agreement (UX-1)**
**Article XXV: Agreement and Termination**
**Section 25.10 Effective Date**

Apart from its effective and termination dates, May 1, 2016 and April 30, 2019 respectively, the language of Article XXV, Section 25.10 herein is identical to Article XXIII, Section 23.10 as described above

---

[2] Portions omitted.

**THE UNION'S POSITION**

It is the Union's position that Delta B.J.D.S. remained bound and remains bound to the current Agreement with the Union by virtue that, following its execution of the Addendum (UX-4) specifically agreeing to continue in full force and effect through April 30, 2013 "all terms and conditions contained in the 2007-2012 Agreement,…" the Company never, thereafter, notified the Union of its intent to terminate its Agreement with the Union or, for that matter, any subsequent successor Agreement as required by then Article XXIII, currently Article XXV of the Agreement. Moreover, the Union points to Delta's continuing submission of contributions to the Funds on behalf of members of Local 77 during late 2016 and the first half of 2017 on its John Whittier School Camden, New Jersey and Lord & Taylor, Quaker Bridge Mall job sites (UX-6) as further evidence that it remains bound to the Agreement.

Thus, having never terminated its Agreement with the Union, Delta violated the terms of the Agreement, specifically Article I, Recognition and Scope; Article II, Work Jurisdiction; Article III, Section 3.70 Job Notification; and Article VII, Section 7.10 Job Steward when it failed to notify the Union that it was to begin work within the Union's territorial jurisdiction at the Inspira Hospital Bridgeton, New Jersey jobsite and by failing to request that a Local 77 Job Steward be dispatched to that job. By failing to do so, the Union contends that, at the minimum, the Company failed to pay the requisite Job Steward those wages and fringe benefits provided for under Article X of the Agreement.

The Union further argues that in the absence of a certified Job Steward, it is unaware of the status of those laborers employed to perform demolition work, their union affiliation, if any, and the exact number of hours each may have worked performing work

8

covered by the Agreement. Accordingly, the Union requests that it be awarded a payroll audit of the Delta Inspira Bridgeton and Vineland projects in order to determine the extent to which the Company violated the Agreement.

As indicated previously, the Company did not participate in the arbitration of this dispute and has not taken any positions relative to the merits of the Union's claims, which stand un-rebutted.

## DISCUSSION AND OPINION

### The Matter of Service

Despite its failure to appear at the arbitration, no doubt exists that the Company was properly served with timely notice of the date, time and place of the hearing. Thus, documentary evidence demonstrates that the Company was served by Certified (#7015 0640 0002 5406 5117) and First Class Mail by the arbitrator as well as by facsimile transmission.

Accordingly, I find sufficient evidence exists that the Company was on clear notice of the proceedings in this matter and that if any evidence existed to rebut any of the Union's evidence, the Company has only itself to blame for the failure to make such evidence available to the arbitrator.

### The Collective Bargaining Agreement

Documentary evidence firmly established that the Company executed a Short Form Agreement (UX-3) and a subsequent Addendum (UX-4) agreeing to be bound to

9

the terms of Master Collective Bargaining Agreement between the Union and the Building Site and General Construction Contractor and Employers covering the State of New Jersey, through April 30, 2013. Those terms and conditions included, *inter alia*, at Article XXIII an "evergreen" provision extending its `terms beyond expiration in the absence of a signatory employer's written notice that it wished to terminate the Agreement as specified therein. In the absence of such written notice the Agreement automatically renewed itself on a year-to-year basis thereafter, including the then in effect wages and benefits. Indeed, Union Agent Wilcox testified that the Union had never received any notification or correspondence from the Company that it wished to terminate the Agreement.

Courts have upheld arbitral decisions recognizing the viability of "evergreen" provisions automatically extending collective bargaining agreements where signatory employers failed to provide proper notice, *Residential Roofers Local 30-B Health and Welfare Fund of Philadelphia & Vicinity v. A&B Metal and Roofing, Inc.*, No. 96 CV-5063 and cases cited therein. *In Down To Earth Landscaping v. Southern New Jersey Building Laborers District Council*, Civil Action No. 06-578 (USDC New Jersey, 2007), the Court confirmed an arbitrator's Award finding that the company failed to take advantage of the very specific termination procedure outlined in the CBA, and therefore the "evergreen provision" was triggered, which binds an employer from year-to-year. Thus, Court rejected the company's argument that "it did not agree to an ongoing relationship with the Union." Moreover, Courts also recognize that it is within the authority of arbitrators to decide whether a collective bargaining agreement had expired or whether, pursuant to an "evergreen" clause, the agreement continues in effect, *IATSE Local 720 v. In Sync Show Productions*, No. 12-17200, (9th Cir. 2015). See also *New*

10

*Jersey Statewide Laborers Benefit Funds* v. *American Coring and Supply*, (341 Fed. Appx. 816 (3rd Cir. 2009).

Referencing the Supreme Court's decision in *Steelworkers*[3], it is a well-established principle of labor arbitration that an arbitrator's opinion is valid if it "draws its essence" from the parties' agreement and cannot simply reflect the arbitrator's own notions of industrial justice. In the instant case, the language of the Agreement is clear and precise. For an employer to terminate the Agreement it must do so by written notice ninety (90) days prior to the Agreement's expiration and in the absence of such notice, the Agreement will automatically renew from year to year thereafter. Therefore, in the absence of any evidence to the contrary, I am compelled to find that the Agreement has renewed from year to year since its expiration on April 30, 2013.

## Violations of the Agreement

Having found that the preponderance of evidence adduced during the hearing firmly established that the Company had never given notice that it wished to terminate the Agreement, it remained, therefore, signatory to the Agreement. As such, it is axiomatic that it was in violation of Article III, Section 3.70 Job Notification when it failed to give notice to the Union in advance of April 13, 2107 that it was to begin demolition work at the Inspira Hospital jobsite as said demolition work is covered by Article II, Section 2.10 of the Agreement. Moreover, having failed to give the Union advance notice, the Company also violated Article VII, Section 7.10 Job Stewards by precluding the Union from appointing a certified Job Steward to the Inspira Hospital

---

[3] *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

Bridgeton jobsite with authority to protect all terms and conditions of employment guaranteed by the Agreement as specified under Section 7.30 of the Agreement.


**THE REMEDY**

As a consequence of the Company's breach of the Agreement, I find in agreement with the Union's position that it be awarded those wages and fringe benefits, which would have been paid to a certified Job Steward had the Company complied with the Agreement. Thus, under such circumstances, the customary and most frequent remedy utilized by arbitrators is a monetary award of damages to unit employees equal to the work opportunities afforded non-union employees.[4] Moreover, in the absence of readily identifiable bargaining unit employees who were denied work opportunities or were improperly displaced, arbitrators routinely award damages, equal to lost work opportunities, to the union. *Brutoco Engineering*, 92 LA 33 (Ross, 1998). Thus, I find that the Union shall be awarded damages for lost wages equal to the lost work opportunity suffered by the absence of a certified Job Steward and that the New Jersey Building Laborers Statewide Benefit Funds shall be awarded damages for lost benefit contributions.

I also find in agreement with the Union's position that, in the absence of a certified Job Steward, it be awarded a payroll audit of the Company's Inspira Bridgeton and Vineland projects in order to determine the full extent to which bargaining unit

---

[4] Elkouri and Elkouri, How Arbitration Works, p. 1244 (Alan Miles Ruben, Editor, BNA Books, 6th ed. 2003).

employees were denied those work opportunities they were otherwise entitled to had the Company not violated Article II, Section 2.10 Work Jurisdiction of the Agreement.

Accordingly, based upon record evidence that the Company performed demolition work over a two-week period without a certified Job Steward at its Inspira Hospital Bridgeton jobsite, I direct the Company to make payment to the Union and its Funds in accordance with the following formula:

Lost wages shall be calculated by multiplying the number of job hours eight (8) per day for ten (10) work-days by the applicable hourly contractual wage rate.

Lost benefit contributions shall be calculated by multiplying the number of job hours eight (8) per day for ten (10) workdays by the applicable hourly contractual benefit contribution.

## LOST WORK OPPORTUNITIES WAGES
### Delta B.J.D.S' Inspira Hospital Bridgeton Jobsite

| Days | Workers | X | Hours | X | Wage Rate | = | Lost Wages |
|------|---------|---|-------|---|-----------|---|------------|
| 10   | 1       |   | 80    |   | $32.40    |   | $2,592.00  |

Wages Total   **$2,592.00**

## LOST WORK OPPORTUNITIES FRINGE BENEFITS
### Delta B.J.D.S' Inspira Hospital Bridgeton Jobsite

| Days | Workers | X | Hours | X | Rate | = | Lost Benefits |
|------|---------|---|-------|---|------|---|---------------|
| 10   | 1       |   | 80    |   | $27.37 |  | $2,189.60   |

Wages Total   **$2,189.60**

13

**Totals:**

| | |
|---|---|
| **Total Lost Wages due the Union** | $2,592.00 |
| **Total Fringe Benefit Contributions due the Funds** | $2,189.60 |
| **Subtotal** | $4,781.60 |
| **Arbitrator's Fee @ $1,000 per diem**[5] | 750.00 |
| **Total Due** | $5,531.60 |

Accordingly, based upon all of the foregoing, the undersigned renders the following:

---

[5] Each party to the Agreement is responsible for one-half the cost of this arbitration. As such the arbitrator's $1,500 fee @ $1,000 per diem has been assessed as follows: Delta B.J.D.S, $750 and Local 77, $750. The Company's half share, however, has been added to the total amount due the Union and the Union in turn shall remit the full $1,500 fee to the arbitrator upon receipt of this Award.

```
-------------------------------------------------X
```
In the Matter of the Arbitration
                        Between

DELTA, B.J.D.S., INC.
                        Company

                        and

NEW JERSEY BUILDING
LABORERS' DISTRICT COUNCIL,
LOCAL 77
                        Union

Re:  Failure to Apply Agreement - Job Steward
Inspira Hospital Bridgeton, NJ Jobsite
```
-------------------------------------------------X
```

# AWARD

1.  The Union's grievance is sustained.

2.  The Company violated Article III, Section 3.70-Job Notification and Article VII, Sections 7.10 and 7.50-Job Stewards of its Agreement with the Union.

3.  Consistent with this Opinion and Award, the Company shall remit the amount of $ 5,531.60 in damages resulting from lost work opportunities due payable as follows:
$2,592.00 payable to the Union, NJ Building Laborers' District Council, Local 77;
$2,189.60 payable to the NJ Building Laborers' Statewide Benefit Funds; and
$750.00 payable to the Union for the Company's half share cost of Arbitration.

4.  The Arbitrator shall retain jurisdiction indefinitely over the remedial aspects of the Award.

Dated: June 30, 2017

Louis P. Verrone
Arbitrator

STATE OF NEW JERSEY
COUNTY OF ESSEX
On this 30th day of June 2017, before me personally, came and appeared Louis P. Verrone, to me known and known to me to be the person described herein who executed the foregoing instrument, and he acknowledged to me that he executed the same.

Notary Public of New Jersey        My Commission Expires July 27, 2020

15

Exhibit B

# New Jersey Building Laborers Statewide Benefit Funds

3218 Kennedy Blvd., Jersey City, NJ 07306      Phone: (201) 963-0633    FAX: (201) 963-1563

## Employer Trade Agreement Report

| | |
|---|---|
| Name: **DELTA B.J.D.S. , INC.** | EIN: **232193969** |
| Address: **1345 INDUSTRIAL BLVD.** | Phone: **(215) 322-2900** |
| **SOUTHAMPTON, PA 18966** | Fax: **(215) 322-1616** |

### Trade Agreement History

| Trade Agmt | Start | End | Expire | Received | Org | Signed By | Title |
|---|---|---|---|---|---|---|---|
| 199-ENVIRO-20 | 5/1/2013 | 4/30/2018 | | 7/19/2013 | 199 | | |
| FRZ-2013 | 5/1/2010 | 4/30/2013 | | 5/2/2010 | ER | DAMIAN LAVELLE | CONTROLLER |
| INDEP-2007 | 5/1/2002 | 4/30/2007 | | 2/4/2005 | 222 | SALLIE LAVELLE | PRESIDENT |

### Trade Agreement Image



NEW JERSEY BUILDING CONSTRUCTION LABORERS' DISTRICT COUNCIL

**Addendum to Collective Bargaining Agreement**

AUTHORIZED EMPLOYER REPRESENTATIVE:
Delta/B.J.D.S., Inc.

Print Date: 7/27/2017  1:56 PM

Exhibit C

# AGREEMENT

## Preamble

WHEREAS, this Collective Bargaining Agreement (hereinafter the "Agreement") is entered into by the undersigned Employer (hereinafter "Employer") and the New Jersey Building Construction Laborers' District Councils and Local Union 3 and 77 of the State of New Jersey (hereinafter the "Union"), and

WHEREAS, the New Jersey Building and Construction Laborers' District Council and Local Unions 3 and 77 of the State of New Jersey bound by this Agreement enter this Agreement individually and it is further understood that the liabilities of said District Council and Local Unions shall be several and not joint; and

WHEREAS, it is the purpose of this Agreement to build, develop and maintain a harmonious working relationship between the Employer and the Unions in which the rights of both parties are recognized and respected and the work is accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties,

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, BE IT AGREED AS FOLLOWS:

## Article I: Recognition and Scope of Agreement

**1.10   Union Recognition**

The Employer recognizes that the New Jersey Building Construction Laborers District Councils and Local Unions bound hereby represent a majority of employees of the Employer doing laborer's work in the State of New Jersey and shall be the sole bargaining representatives with the Employer for all employees employed by the Employer engaged in all work of any description set forth under Article II, Section 2.10, Work Jurisdiction, below.   The parties agree that the collective bargaining unit covered by this Agreement is a single multi-employer bargaining unit consisting of employers that are bound to this Agreement.   The employer is satisfied and acknowledges that the Union has claimed and demonstrated that the Union has majority support and represents a majority of the employer's employees in an appropriate bargaining unit for the purposes of collective bargaining. Accordingly, the Union demand recognition and the employer recognizes the Union as the exclusive bargaining agent under Section 9 of the NLRA for all of its employees within the contractual bargaining unit. The District Council and Laborer Local Unions bound hereby are:  New Jersey Building Construction Laborers' District Council and Building and General Construction Laborers' Locals 3 and 77.

2

**1.20    Good Faith Agreement**

The Employer shall in good faith live up to all the provisions of this Agreement. The Union obligates itself for all its members that they will in good faith live up to all the provisions of this Agreement. Acts of any individual member of the Union on his own initiative and without the authority of the Union shall not render the Union liable therefor, nor is the Union responsible for acts of unauthorized agents.

**1.30    Scope of Agreement**

The relationship of the parties is fully and exclusively set forth by this Agreement and by no other means, oral or written.

### Article II: Work and Territorial Jurisdiction

**2.10    Work Jurisdiction**

The Employers bound hereby recognize the Unions' claim to all jurisdiction as set forth in the Manual of Jurisdiction [October 1961] and in this Agreement as the same may relate to building, site and general construction in the State of New Jersey and the parties hereto agree to cooperate in the proper assignment of work jurisdiction as set forth herein to the construction laborers.

**Tenders:** Multi-Trade Tenders tending masons, plasterers, carpenters and other building and construction crafts.

Tending shall consist of preparation of materials and the handling and conveying of materials to be used by mechanics of other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material and other materials to such mechanic, whether by bucket, hod, wheelbarrow, buggy, power buggy, or other motorized unit used for such purpose, including all fork lifts of any description or type and wheresoever used, conveyors, Bobcats, and all similar machinery, and the loading, unloading and handling of all materials onto such devices.

Unloading, handling and distributing of all materials, including sheetrock, paneling, ceiling tile and assemblies, windows, door bucks, metal studs, finished and rough lumber, finished cabinetry, and all fixtures, furnishings and appliances, crated or uncrated, from point of delivery to stockpiles and from stockpiles to approximate point of installation. The unloading and loading of trucks and freight cars at the site.

The moving of all furniture, crated or uncrated, new or old, in a building under construction or renovation, including the loading and unloading and the distribution and erection of furniture on a job or project.

The unloading and handling, including all hooking, unhooking, placement and signaling, of all concrete plank, sills, coping, and other concrete building materials, including precast, post, pre-stressed, and preformed concrete in any form, and all brick panel together with all similar building and construction materials prepared off-site which replace materials, methods or work formerly done on-site by any trade that was tended by laborers,  at the job site.

The aging and curing of concrete, mortar and other materials applied to walls, floors, ceilings and foundations of buildings and structures, highways, airports, overpasses and underpasses, tunnels,

3

bridges, approaches, viaducts, ramps or other similar surfaces by any mode or method, except where otherwise assigned to a heavy construction laborers local union.

The cutting of masonry where sledge, mechanical or pneumatic hammers are used. Operation of all hand, pneumatic, electric, motor, combustion, or air-driven tools, concrete saws or equipment necessary for the performance of work described herein, including forklifts, rollers, wackers (with or without levers), vibrators, concrete saws regardless of type (self propelled or manual), gunite nozzle and machine workers, power rollers, combination tamper and vibrator, power wheel barrows and buggies, and all other equipment, including all Bobcats (with or without accessories), used to do work once done by laborers.

**Cleanup:** Cleaning and clearing of all debris, including wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structure and cleaning of all debris in building and construction area, including all cleanup after all other trades which cleanup shall not be performed by any other trade or the apprentice of any other trade.

The general cleanup, including sweeping, cleaning, washing down and wiping of construction facilities, equipment and furnishings and removal and loading or burning of all debris including crates, boxes, packaging waste material. Washing or cleaning of siding of any type, walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein.

Clean-up, vacuuming, mopping, washing, waxing and polishing or dusting of all floors, surfaces or areas whether by hand or machine. Final clean-up of all types and any description on all projects, including but not limited to industrial, office, residential and retail projects.

**Water Removal:** The dewatering of all construction sites and/or the removal of drainage or other water from construction sites or areas. The handling, transportation, fueling, refueling and cleaning of pumps, foot valves, and hoses and all engineers' equipment and the attaching of the same, and the installation, driving and servicing of all well points, wick drains and any other dewatering system.

**Weather and Other Temporary Protection:** The installation, dismantling, adjusting of panels, windbreaks and/or temporary enclosures or other weather protection devices whether they be canvas, synthetic or other material of any configuration and for any purpose.

All temporary protection of floors or any other surface by any method or material including plywood, cardboard, masonite, homosote, paper, plastic, sysilcraft, etc.

**Temporary Heat:** Drying of plaster, concrete, mortar or other aggregate, when done by salamander heat or by temporary heating units or any other drying process of any type or description. The heating of all buildings under construction where any form of temporary heat is used, including salamanders and megaheaters, regardless of fuel or power source, and the placing, setup, lighting, refueling, servicing, maintenance, manning and removal of all such heaters.

**Scaffolds:** Erection, planking and removal of all scaffolds of all types, including mast climbing scaffolds and all platforms, runways, ramps and putlock scaffolds, for lathers, plasterers, bricklayers, masons and other construction trades crafts. Building, planking or installation and removal of all staging, swinging and hanging scaffolds, including maintenance thereof. Where self-supporting scaffolds or staging over fourteen feet in height or specially designed scaffolds are built by Carpenters, Laborers shall tend said Carpenters on erection thereof; the dismantling of said scaffolds, as well as preparation for foundation or mud-sills for said scaffolds and maintenance of same shall be done by Laborers, together with all transportation and stockpiling of dismantled scaffold equipment, planks and materials.

4

**Masonry Scaffolds:**  With reference to the Masonry Contractors, the laborers will do the entire erection and dismantling of all scaffolds.  The aforesaid jurisdiction is provided by the International Agreement between the Mason Contractors Association of North America, Incorporated and the Laborers' International Union of North America, executed as of January 6, 1955 and amended November 1, 1979, a copy of which is incorporated by reference and made part hereof.

**Excavations and Foundations, Site Preparation and Clearance, Transportation and Transmission Lines**: Excavation for building and all other construction; digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals, and all handling, filling and placing of sand bags connected therewith.  All drilling and scaling on the site, including areas adjacent or pertinent to construction site; installation of temporary lines.

On-site preparation for clearance for construction of any structures  where the same are constructed within the property lines of the building project. Clearing and slashing of brush or trees by hand or with mechanical cutting methods.  Falling, bucking, yarding, loading or burning of all trees or timber on construction areas.  Choker setters, off bearers, lumber handlers and all laborers connected with on-site portable sawmill operations connected with clearing.  Erection, dismantling and/or reinstallation of all fences.  Clean-up of job sites, including tying on, signaling, stacking of brush, trees or other debris, and burning where required.  All soil test operations of semi and unskilled labor, such as filling of sand bags, handling timber and loading and unloading of same.

All grading of top soil by any method, seeding by hand, device or machine, whether power or manual, all landscaping, and the planting of all trees, shrubs,  bushes, ornamental and other plants of any description.

**Concrete, Bituminous Concrete and Aggregates:**

(a)    Concrete, bituminous concrete, or aggregates for walls footings, foundations, floors or for any other Construction.  Mixing, handling, conveying, wheeling, ramming, spreading, leveling, pouring, vibrating, guniting and otherwise placing concrete, cement mortar, or aggregates, whether done by hand or any other process.  All types of handling and distribution of all ready-mixed concrete. Wrecking, stripping, dismantling and handling concrete forms and false work whether constructed of wood, aluminum or other material.  Building of centers for fireproofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, Diesel or electric power.  When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket.  Placing of concrete or aggregates, whether poured, pumped, gunited, or placed by any other process, including the operation of Line Dragons or similar systems.  The assembly, uncoupling of all connections and parts of or to equipment used in mixing or conveying concrete, aggregates or mortar, and the cleaning of such equipment, parts and/or connections.  All vibrating, grinding, spreading, flowing, puddling, leveling and strike-off of concrete or aggregates by floating,  rodding or screeding, by hand or mechanical means, including the setup, operation, maintenance, dismantling, and moving of any and all automatic or self-leveling or similar concrete leveling machines, prior to finishing.  Where pre-stressed or pre-cast concrete slabs, sill, coping, concrete plank, walls or sections, including brick panels, or other preformed concrete in any form, whether steel reinforced or not, are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections.  All mixing, handling, conveying, placing and spreading of grout for

5

any purpose.  Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b)    The filling and patching of voids, crevices, etc., to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c)    The loading, unloading, hoisting, carrying, distributing and handling of all rods, mesh and material for use in reinforcing concrete construction.

(d)    All work on interior concrete columns, foundations for engine and machinery beds.

(e)    The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms and panels in their entirety, where the forms are not to be reused on the same job for the same purpose and the stripping of all flat arch work and the replacing of all shoring or supports and the stripping of all footing forms.  The moving, cleaning, oiling and carrying of all forms to the next point of erection.  The cleaning of all materials before leaving a job shall be the work of the laborers.  The jacking of slip forms, and all work connected therewith.

(f) The snapping of wall ties and removal of tie rods.  All sandblasting, including the handling, placing and operation of the nozzle, hoses and pots or hoppers on sandblasting or other abrasive cleaning and the maintenance, moving, setting up, servicing, supplying, storage, and all aspects of the operation of all sandblasting equipment of all types and descriptions for any purpose.

(g) Bushing and other preparation of concrete surfaces.

(h) Polishing of concrete floors.  Sealing of concrete and grout.

**Drivit Systems.**  All aspects of the installation and application of drivit-type systems.

**Fireproofing.**  The mixing of all intumescent, gypsum plasters, fibrous plasters, cementitious and other fireproofing coatings regardless of the means of application.  The layout of hoses for spraying fireproofing coatings onto surfaces, clean up of overspray and masking of spray areas, and the spray application of fireproofing coatings onto surfaces, and the cleaning and maintenance of all equipment.

**Sidewalks and Curbs**: Work in the excavation, preparation, the grading and landscaping of all sidewalk and curb areas, regardless of material used, and the concreting of all such areas,  and all semi-skilled and unskilled labor connected therewith.

**Underpinning, Lagging, Bracing, Propping and Shoring:**  Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods.  All work on house moving, shoring and underpinning of structures; loading, signaling, right-of-way clearance along the route of movement.  Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work.  Clean-up and back-filling, landscaping of old and new sites.

**Drilling:**  All work of drilling, jack hammering. Operation of all rock and concrete drills, including handling, carrying, laying out of hoses, steel handling, installation of all temporary lines.  All high scaling and other rock breaking and removal after blast.

**Signal Men:**  Signal men on all construction work defined herein, including traffic control signalmen at construction sites.  When concrete or aggregates are conveyed by crane or derrick or similar methods, the hooking on, signaling, (whether in the open or in the blind) dumping and unhooking of the bucket.   Where wrecking is done by ball, all signaling shall be done by a laborer.

On all jobs where hoisting engines are in use, a Laborer shall act as bell-man. He shall load and unload the hoist and give bell signals for the raising and lowering of the hoist.

6

On all jobs where elevators are in use, the ringing of bells and use of radio communicators or telephones. When machines are in use for excavation, backfilling, grading or other purposes, the guiding and directing of such machines.

**General Excavation and Grading:** The clearing, excavating, filling, back-filling, grading and landscaping, planting and seeding of all sites for all purposes and all labor connected therewith, including chainmen, rodmen, grade markers, etc.

**Wrecking:**   The wrecking or dismantling of buildings and all structures, including interior demolition and selective or controlled demolition. Handling of all dismantled materials and debris to be recycled or salvaged. Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams. The operation and maintenance of all hydro-demolition equipment. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards In connection with cutting, cleaning, storing, stockpiling or handling of materials. All clean-up, removal of debris, burning, backfiring and landscaping of the site of wrecked structure. Where wrecking is done by ball, all signaling shall by done by a laborer. The dismantling, removal or demolition of all ductwork and HVAC equipment not to be reused on the job site, and the handling and removal of all disconnected ductwork and HVAC equipment from the area to disposal areas. The handling, transportation and stockpiling of all disconnected ductwork and HVAC equipment which is to be reused is to be done by laborers.

**Use of Tools:** Operation and maintenance of all hand, pneumatic, electric, motor, combustion or air-driven tools or equipment necessary for the performance of work described herein. Mechanized equipment including Bobcats used for grinding, finishing, demolition, clearing, excavating, foundation trenching, or other trenching, filling, backfilling, finish grading, planting, seeding, and the restoration of all sites will be performed and the equipment maintained by laborers. Pumps shall be manned by laborers. Where new tools or equipment are introduced into the area which do work formerly done by laborers, the new tools or equipment are to be handled, maintained and operated by laborers.

**Hazardous Materials:** The demolition and removal of all hazardous materials from buildings and the decontamination of all tools, equipment and vehicles used at such sites, including but not limited to asbestos, toxic waste, etc.

**Solar Projects:** The unloading, handling and distribution of all materials from point of delivery to storage or point of installation whether by hand or motorized unit; excavation and digging of trenches, foundations, footers and holes; digging , sheeting, cribbing, bracing, and proppig of foundations, footers, holes, caissons and trenched; mixing, handling, conveying, spreading, leveling, pouring, vibrating, guniting or otherwise placing concrete, cement, mortar or aggregates, whether done by hand or any other process; installation of pre-stressed or pre-cast concrete slabs, concrete planks, walls or sections or other preformed concrete in any form; conduit work; installation, bracketing, ballasting, and tethering of solar racks and the installation of solar panels onto racks.

**Miscellaneous:** All yardmen, watchmen, guards, flagmen, the manning and servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, water boys, material yards, junk yards, asphalt plants, concrete products plants, and all

7

training, the regular laborer shall return to his position with the Employer, if it still exists, and the replacement laborer shall be returned to the hall, if not needed by the Employer.  Laborers acting as replacement laborers shall not be charged with a referral by the local union under its hiring hall rules.

### 3.50    Employer Cooperation in Workforce Improvement

To implement the LIUNA Code of Performance adopted by LIUNA, the Employer agrees to designate discharges "for cause," when appropriate and to substantiate such cause if necessary in proceedings under the Code of Performance.  This clause is intended only to assist the Union in implementing its Code of Performance, and a worker's only rights there under are in connection with future referrals under the Union's hiring hall procedures. This clause does not create any new or additional rights whatsoever for workers under this Agreement, including not creating any new or additional right to reinstatement with or without back pay from the Employer.

### 3.60    Non-Discrimination

The Union and the Employer agree to abide by all Executive Orders and subsequent amendments thereto regarding the Civil Rights Act of 1964 pertaining to non-discrimination in employment in every respect, and all other applicable state and federal laws and regulations.

### 3.70    Job Notification

All Employers shall provide notification of a job start to the Local Union where a project is located prior to the start of its work on the project.  General Contractors shall advise the Local Union of all subcontractors scheduled to perform work within this Agreement at the jobsite and shall also require those subcontractors to give notice at the commencement of their work.

## Article IV: Management Rights

### 4.10    Statement of Management Rights

(a)      The Employer retains full and exclusive authority for the management of his own operations. The Employer may utilize any method or techniques of construction and the Employer shall decide the amount of equipment to be used and the number of men needed.

(b)      If there is any conflict between this Article and any rights, benefits or conditions which are provided for in this Agreement, the said rights, benefits or conditions set forth in this Agreement shall prevail.

(c)      The Employer shall be the sole judge of the work performed and whether or not the work is performed satisfactorily by the workers.  The Employer shall have the right to discharge any unsatisfactory workers.

### 4.20    Establishment of Workplace Rules and Regulations

Employees shall observe the Employer's rules and regulations, not inconsistent with this Agreement, which shall be posted at the project provided said rules are reasonable and submitted to the Union at least ten (10) days in advance for prior approval.  Said approval shall not be unreasonably withheld.

Employers shall conform to all applicable provisions of the Construction Safety Code for the State of New Jersey and all applicable provisions of the Occupational Safety and Health Act laws and regulations.

(b)      It is the Employer's exclusive responsibility to provide a safe and healthful workplace for all workers covered under this Agreement and the Union does not assume responsibility for the same.

(c)      The Union, its officers, employees, agents and representatives shall not be liable for any injuries, disabilities or diseases arising from or relating to the work covered hereunder or the job sites where such work is performed.

(d)      The Employer and the Union members waive any cause of action against the Union, its officers, employees, agents and representatives, for any injuries, disabilities, or diseases arising from or relating to the work covered hereunder or the job sites where such work is performed.

(e)      The Employer indemnifies the Union, its officers, employees, agents and representatives, and holds them harmless from any liability, damages, settlements, and legal fees and costs arising out of any work related injuries, disabilities, or diseases to any worker arising from or relating to the work covered hereunder or the job sites where such work is performed.

(f)      All employees accepting a referral to a project where the employer or owner mandates drug testing or a criminal history background check, where such testing or background check is paid for by the owner or employer and required of all other employees, shall submit to, permit and cooperate with such testing or background check. Such testing or background checks shall be performed in an industry standard manner and the results thereof shall be confidential. The Union shall have the right to review the procedures used and any objections thereto shall be resolved expeditiously.

(g)      In the referral to jobs, laborers otherwise having the skills required for a position who have a 30 hour OSHA Construction Safety certification shall be given first preference for referral by the hiring hall. Next preference shall be given to those with a 10 hour OSHA Construction Safety certification and last preference shall be given to those without either certification. Laborers shall take any refreshers required by the New Jersey Building Laborers Training and Apprenticeship Program in a timely manner to maintain their eligibility for referral.

### Article VII: Job Stewards

**7.10      Appointment of Job Steward**

(a)      On every job where laborers are employed by an Employer bound to this Agreement there shall be a laborer Job Steward employed by the Employer who shall be a member of the territorial local union where the job is located. No laborer shall be permitted to work without a Job Steward.

(b)      The Job Steward shall be appointed by the Business Manager in his sole discretion and the Business Manager shall be the sole judge as to the Job Steward's performance of his duties as Steward.

(c)      The Job Steward shall not be discharged except upon a showing of good cause and without 24 hours prior notice to the Business Manager.

(d)      On a project that requires just one laborer, the Business Manager, at the Employer's request, may appoint a member of the Employer's regular laborer work complement who is a member in good standing of either Local 3 or Local 77 as a Temporary Job Steward, provided the following conditions are met:

13

1. The Employer notified the Union of the job start; and
2. The designated laborer has satisfactorily completed the basic Job Steward training course required by the Local Union; and
3. The Employer agrees to require and the designated laborer agrees to perform the duties required of a Job Steward, including the timely submission of Shop Steward Reports, and reporting to the Local Union of subcontractors and other activity on the jobsite, and
4. The Temporary Job Steward performs the duties of a Job Steward to the satisfaction of the Business Manager, and
5. The Employer calls the Local Union for a Job Steward when a second laborer is needed.

Where an Employer fails to comply with these conditions the Local Union may disqualify the Employer from future consideration for the appointment of Temporary Job Stewards form his regular laborer workforce. Where a designated laborer is appointed a Temporary Job Steward and fails to perform the duties of a Job Steward to the satisfaction of the Business Manager he may be replaced by the Business Manager as Job Steward and the designated laborer may be disqualified from future appointment as a Temporary Job Steward.

(e)      A Temporary Job Steward may be appointed who has not taken the basic Job Steward training course required by the Local Union provided he takes the course within 60 days of his initial appointment. Any Temporary Job Steward who fails to take the course within the allotted time will be replaced by the Business Manager and will be ineligible for future appointments.  Beginning January 1, 2014 all Temporary Job Stewards must have satisfactorily completed the basic Job Steward training course prior to their appointment.

(f)      The Employer shall ensure that a working Job Steward is on all projects where laborers' work is being performed by the Employer or a subcontractor of the Employer, provided, however, that the Employer shall not be required to employ a Job Steward when there is no laborer's work as described in Article II above to be performed at the project.

(g)      Failure to hire or improper discharge of a Job Steward designated by the Union on a project where there is laborer's work being done shall be deemed an open breach of this Agreement and the Union may employ any remedy allowed by law, including job actions, to correct the breach.

## 7.20    Job Steward Authority

Job Stewards have no authority to take strike action, or any other action interrupting the Employer's business except as authorized by official action of the local union.  The Employer recognizes these limitations upon the authority of the Job Steward and shall not hold the Union liable for any unauthorized acts.

## 7.30    Job Steward Responsibilities

(a) It shall be the duty of the Job Steward to see to it that the provisions of this Agreement are being fully carried out on said job.

(b)  The Employer shall give the Job Steward sufficient time to perform his duties and the Job Steward shall not be discriminated against for doing so.  The Job Steward shall be given sufficient time to complete his Shop Steward Report on payday during working  hours and, on request, shall provide the Employer with a copy of his report.

14

(c)  On the request, the Employer shall promptly provide the Job Steward with the names, addresses, social security numbers, local union affiliation, and telephone numbers of any workers in the Employer's employ doing laborers' work.  Furthermore, the Job Steward shall be provided the opportunity to secure properly executed dues and NJSLPAC authorization forms from any employees doing laborers' work, including any laborers permitted to work in the jurisdiction from other local unions.

(d)  The Job Steward shall have the right to inspect the laborers' payroll prior to its distribution to confirm that the required wage standards are being adhered to.

In the case of breach of any of the provisions of this Agreement the Job Steward shall immediately contact the Business Manager or Business Agent of the local union so that the Business Manager or Business Agent may make an attempt to amicably adjust the dispute with the Employer.

## 7.40   Working Job Stewards

All Job Stewards shall be working Job Stewards.  There shall be no non-working Job Stewards.

## 7.50   Certified Job Stewards

(a)  A Job Steward who has satisfactorily completed the (1) thirty-hour OSHA Construction Safety and (2) First Aid/CPR and (3) Scaffold User and (4) Lead Renovator courses, together with any additional courses or refreshers required by the Union, shall be classified a Certified Job Steward.

(b)  Certified Job Stewards, their training being a benefit to the Employer, and as compensation for completing records of hours worked for the fringe benefit funds due contributions under this Agreement, shall be paid $.75 per hour over the Class A Rate or over the rate for the classification in which he is working, whichever is higher.

## Article VIII: Foremen

## 8.10   Foremen

The first foreman and all general foremen at any jobsite shall be selected and assigned by the Employer in the Employer's discretion from its regular work complement.  If additional foremen are needed, then the Employer shall give the local union first opportunity to refer foremen qualified for the type of work required.  If the local union does not have qualified foremen to refer, then the Employer may assign a foreman from his regular complement of workers.  All foremen shall be employees employed in the bargaining unit set forth in Section 1.10 and members in good standing, pursuant to Section 3.10, with a local union signatory to this Agreement.

## 8.20   Foreman Rate of Pay

(a)      A laborer foreman shall be paid at a rate equal to an additional one hour of pay for each eight hours of pay.  A general foreman shall be paid at a rate equal to an additional two hours of pay for each eight hours of pay.  For purposes of calculating these rates, the Class A laborer's rate shall be used.  Overtime for foremen and general foremen shall be paid based on the foreman or general foreman pay rate calculated as set forth above, as may apply.

(b)      All foremen and general foremen shall be guaranteed forty hours per week at the foreman or general foreman pay rate, as may apply, until the conclusion of the job.  If the job is temporarily

15

motor buggy, conveyors, street cleaning machines, hydro-demolition equipment, and all types of forklifts or bobcats (or equivalent machinery). Foremen shall be paid in accordance with Article VIII hereof.

**10.30   Class B Laborers**
Class B shall be the basic laborer's rate and includes all work not included in Class A or Class C.

**10.40   Class C Laborers**
Class C laborers are laborers doing janitorial-type light clean up work associated with the turnover of the project or part of a project to the owner, and all flagmen, watchmen, fire watch personnel, and those manning temporary heat of all types.

**10.50   Partial Day Work in Classification**
Where, at the contractors request, a laborer is sent to a job site to perform Class A work, that laborer shall be paid the Class A rate for not less than the first eight hours of his employment with the Employer or until his discharge if he is employed by the Employer for less than eight hours. Where a Class B laborer performs two or more hours of Class A work in the course of a work day then that laborer shall receive the Class A rate for the full day. Where a Class B laborer performs less than two hours of Class A work in a work day, then that laborer shall receive his regular rate of pay for the day. Class C laborers may not perform Class A or Class B work unless they are paid the applicable Class A or Class B rate for the full day.

**10.60   New Work Classification**
(a)      If in the term of this Agreement, mechanized changes or changes in the method of operation, or changes in the assignment of existing tasks not previously performed by the Laborers, result in different or new types of work, the Building Contractors Association of New Jersey and the Laborers' International Union of North America, Eastern Region office as a representative of Building and Construction District Councils and Local Unions of the State of New Jersey agree to discuss the same and mutually agree on such work's proper classification.
(b)      The Employer recognizes the Construction Specialist, Masonry Specialist and Concrete Specialist classifications which classifications shall include all such tasks as are assigned by the Employer and accepted by the Unions and approved by the Laborers' International Union of North America, Eastern Regional Office. Rates for these classifications shall be set by agreement by and between the Employer and the New Jersey Building Construction Laborers' District Council and made part of this Agreement through an addendum.

**10.70   Wage and Fringe Benefit Package**
(a)      Effective May 1, 2013 the total basic laborer (Class B) wage/fringe package shall be to $52.72
(b)      Effective May 1, 2014 the total basic laborer (Class B) wage/fringe package shall be increased to $53.52.
(d)      Effective November 1, 2014 the total basic laborer (Class B) wage/fringe package shall be increased to $54.37.

19

(e)     Effective May 1, 2015 the total basic laborer (Class B) wage/fringe package shall be increased to $55.37

(f)     Effective November 1, 2015 the total basic laborer (Class B) wage/fringe package shall be increased to $56.37.

(h)     Class A laborers shall receive $.50 more per hour than Class B laborers receive.

(i)     Class C laborers will receive the standard fringe benefit package (except where a Market Recovery Agreement is in effect setting another rate) and a wage rate equal to 85% of the Class B wage rate.

(j)     When bricklayers receive double time for hot work associated with firebrick, laborers working with the bricklayers shall receive double time as well. One hundred (100) degrees Fahrenheit or over shall constitute hot work.  When laborers are employed on excessive hot work, the contractor shall provide the proper counter fatigue aids which shall meet the standards prescribed by the governing state or federal agency, and shall provide proper gloves, shoes, and protective materials to safeguard laborers when they are handling hot work, and contractors shall be responsible for shoes or clothing which they burn in the performance of hot work.  Laborers must spell each other on all hot work.

(k)     Fringe Benefit Payments.  Fringe benefit contributions shall be due on all hours paid for all work assigned to a laborer by the Employer.  On overtime, Sunday and Holiday time paid, fringe benefits shall be paid at time and one-half.  Benefits shall be paid on behalf of all persons performing work covered by this Agreement, regardless of union membership.  The Employer may not at any time pay benefits in the envelope to any employee performing work covered by this Agreement.  Neither benefits nor checkoffs shall be due on any lump-sum bonus paid to any laborer, or for holidays paid but not worked, or for any paid vacations.  The Employer shall clearly mark any such payment as a bonus, paid but not worked holiday or vacation, in his records and shall have the burden of demonstrating that the payment was a bona fide bonus, paid but not worked holiday or vacation.  There shall be a presumption that a bonus is not bona fide if there is more than one bonus given in a calendar year.

(l)     Upon the request of the union, the employer shall complete and submit prevailing wage surveys to applicable state and federal agencies.

**10.80   Wage and Fringe Benefit Allocation effective 5/1/2013**

Class B Wages

| | |
|---|---|
| Welfare | $11.45 |
| Pension | 8.10 |
| Annuity | 2.45 |
| Training | 1.02 |
| LECET | .30 |
| Health & Safety | .05 |

Checkoffs:

| | |
|---|---|
| LEROF | $   .40 |
| NJSLPAC | .20 |

## Article XXV: Agreement and Termination

**25.10   Effective Date and Termination**

This Agreement shall become effective on the 1st day of May, 2013, or the date signed, whichever is later, and shall terminate at midnight, April 30, 2016. It is mutually agreed, however, that if any Employer signatory or bound to this Agreement desires to terminate this Agreement or to reopen negotiations for a successor agreement to take effect as of the termination date, such Employer must give written notice to the Laborers' International Union of North America, Eastern Region office, of such intention ninety (90) days prior to the termination of this Agreement, otherwise this Agreement is to continue in full force and effect after the termination date of this Agreement from year-to-year. In order for this Agreement to be terminated after the aforesaid termination date, the Employer shall give written notice at least thirty (30) days prior to April 30th of each succeeding contract year and, if said thirty (30) days notice is given, the Agreement shall terminate on April 30th of the contract year following the giving of such notice. In the case of such continuation, the Employer agrees to be bound by the wage and benefit rate schedules and other terms of any new Agreement(s) made by the Union and the Building Contractors Association of New Jersey. In the event that an unsigned employer signs this Agreement within the aforementioned ninety day notice period, then and in that event the employer shall continue to be bound to the successor Agreement(s) from year-to-year as set forth hereinabove until such time as a new Agreement is executed by the employer or proper notice of termination is given to the Union by the employer as provided, in which case this Agreement will be terminated in accordance with the terms of this Article. All termination notices must be made by certified mail with a return receipt to be retained by the sender. Notice by the Union to reopen negotiations shall be given to the Building Contractors Association of New Jersey and shall serve as notice to all signatories of this Agreement, but shall not relieve the employers of their obligation to give notice to terminate this Agreement as set forth above and, unless such notice is received by the Union as provided, such employers shall be subject to the continuation provisions of this Article.

## Article XXVI: Interpretation of Agreement

**26.10   Interpretation of Agreement**

Any conflict in the interpretation of this Agreement not settled directly by the Employer and the local union shall be submitted to the Building Contractors Association of New Jersey and the Laborers' International Union of North America, Eastern Region office as a representative of the Building and Construction District Councils and Local Unions of the State of New Jersey, for resolution. If the same is resolved by mutual agreement, said resolution shall be binding on all parties. If the foregoing parties fail to agree as to a resolution of the dispute, the dispute shall be subject to the grievance and arbitration procedure herein.